FARMER, J.
We reverse a final order of the Department of Health (DOH), disciplining a licensed clinical social worker (Licensee). Upon review, we conclude that DOH failed to render its final order within 90 days after the recommended order was submitted to all parties, a delay that prejudiced the Licensee; that in any event the final order is not supported by competent substantial evidence; and that even if it were properly supported by the evidence the order imposes a penalty requiring a licensee to pay a member of a disciplinary board of the agency the cost of remedial instruction, thus creating an appearance of an intolerable ethical conflict. We remand with directions that all charges be adjudicated in favor of the Licensee, the proceedings be dismissed, and that his license be restored without blemish.
The subject of these disciplinary proceedings is a licensed marriage and family counselor in Florida and the president of the National Board of Mental Health Diagnostics, who has been teaching at Florida International University for 10 years. The Licensee was presented with a juvenile, a 15-year old minor. The parents of the child were divorced and the child apparently resided primarily with his mother.[1] The child reported using drugs extensively in amount and variety. The Licensee had three sessions with the child, all with the mother present. The Licensee also had seven conferences with the mother “as an adjunct to the therapeutic process for the child” in which he sought to offer some guidance to the mother in her care of her son.
The Licensee thought that the child was a danger to himself and advised the mother that he needed intensive therapy under the care of a mental health professional who could prescribe medications. The mother confirms that the Licensee advised her of this conclusion, saying she rejected his recommendation. The Licensee thought the mother “in denial” as to her son’s condition. The boy stopped seeing the Licensee after the three visits and thus the Licensee was unable to make a definitive diagnosis.
The boy’s father, whose insurance paid for Licensee’s services, contacted the Licensee in order to ascertain his son’s condition. The Licensee refused to disclose any confidential communications of the child, but nevertheless did tell the father that his son was in danger of hurting himself or others. The father thereupon contacted his attorney and commenced legal proceedings to modify custody.
Following the custody modification request, the mother contacted the Licensee to obtain her son’s records. The Licensee refused to provide the records to the mother without the child’s express authorization. The mother thereupon complained to DOH about the failure of the Licensee to supply her with her son’s records. DOH in turn requested a copy of the file that Licensee maintained for his treatment of the child. The Licensee at first refused the DOH request because the signature on the patient’s authorization form was copied *331 and appeared forged by the mother. After DOH furnished an authorization from the child, the Licensee supplied the records.
DOH then initiated disciplinary proceedings against the Licensee. It charged him with failing to protect confidential communications of his patient, failing to give copies of “tests, reports, or documents” to his patient and to DOH, and with failing to meet minimum standards of performance. The Licensee denied the charges and requested a formal hearing.
On the day of the scheduled hearing, the Licensee appeared without counsel and requested a brief continuance. He explained that he had extensive oral surgery on the day before the final hearing, involving the removal of one whole level of his teeth, giving him obvious difficulty in speaking. The administrative law judge (ALJ) denied the request. The hearing proceeded, notwithstanding the Licensee’s condition. The witnesses testifying in support of the charges against him included the mother of the minor patient, an investigator for DOH and an expert witness. The ALJ submitted a recommended order which was mailed to the Licensee and DOH on December 29, 2000. DOH entered its final order on August 22, 2001.
Initially, we find error in the failure of the ALJ to grant a brief continuance. We of course recognize that such continuances are usually given to the discretion of the ALJ and are rarely disturbed on appeal. In this instance, however, the circumstances called for more accommodation by the system than the ALJ gave. DOH does not dispute that the Licensee’s reasons for the brief continuance were genuine, arguing instead that the fact of surgery on the eve of the hearing should be viewed as an attempt to delay the hearing. DOH does not explain why we should presume such a motive from so drastic an event. The Licensee obviously did have major surgery on his mouth on the day immediately preceding the day of the hearing affecting not only his substantial interests but those of the State as well. Whether the surgery was planned or not, the Licensee’s condition was a manifest impairment of his ability to defend himself.[2]
License discipline proceedings are not obstacle courses in which licensees must prove their physical mettle. Unless there are compelling reasons otherwise, under these circumstances a short continuance of a day or two should ordinarily have been granted without hesitancy. Considering DOH’s long delay in entering a final order after the hearing, we can only speculate as to what urgency existed for holding the hearing on that day only. “Hurry up and wait” may be acceptable for military recruits, but it is contrary to both the letter and spirit of the statutory procedures for most quasi-judicial, non-summary proceedings affecting the substantial interests of a party under chapter 120. If we had not concluded that the final order should be set aside for other reasons, we would find an abuse of discretion in failing to grant a short continuance and reverse for a new hearing.
In the same vein, however, we also find error in the delay of DOH in rendering its final order. Section 120.569(L)(2) provides:
“Unless the time period is waived or extended with the consent of all parties, the final order in a proceeding which affects substantial interests must be in writing and include findings of fact, if any, and conclusions of law separately stated, and it must be rendered within 90 days ... after a recommended order *332 is submitted to the agency and mailed to all parties, if the hearing is conducted by an administrative law judge.... ”
§ 120.569(L)(2), Fla. Stat. (2001). As our recitation of the facts shows, the agency took almost nine months — or considerably more than 90 days — to render its final order after the recommended order was mailed to all parties.
In Department of Business Regulation, Division of Pari-Mutuel Wagering v. Hyman, 417 So.2d 671 (Fla.1982), the court held that a violation of the time limits set forth in section 120.569 should not result in a reversal unless “the delay resulted in an impairment of either the fairness of the proceedings or the correctness of the action.” 417 So.2d at 673. The Licensee argues that he was prejudiced by the agency’s long delay in entering the final order because he “could not continue in his teaching ... because he was unsure of his rights based upon the oral ruling of the Board ... and was unable to renew his malpractice insurance because he was unsure of how to classify the pending action ... and suffered extensive financial losses in his practice.” We conclude that the delay impaired the fairness of the proceedings.
The record shows that DOH’s Board of Clinical Social Work, Marriage and Family Therapy, and Mental Health Counseling (Board) instructed the Licensee orally at the final hearing to cease his teaching immediately and not to resume until he completed the instruction on ethics included in the penalty provisions that the Board would impose in the final order. In an effort to avoid further accusations of violating Board instructions, the Licensee complied with these oral instructions. The uncertainties created for his practice by the Board’s delay directly caused his practice to deteriorate, a fact not challenged by DOH. As the court’s holding in Hyman makes clear, the remedy for a long unexplained delay that, as here, substantially affects the fairness of the proceedings is to reverse.
Nevertheless because the competency and ethics of the Licensee’s have been challenged, and also because DOH’s construction of substantive law appears to be substantially at odds with the legislative text and purpose, we feel compelled to address the substantive charges. The initial charge was that the Licensee failed to protect the confidences of his patient. Section 490.0147(3) provides:
“Any communication between any person licensed under this chapter and her or his patient or client shall be confidential. This privilege may be waived under the following conditions: When there is a clear and immediate probability of physical harm to the patient or client, to other individuals, or to society and the person licensed under this chapter communicates the information only to the potential victim, appropriate family member, or law enforcement or other appropriate authorities.” [e.s.]
§ 490.0147(3), Fla. Stat. (2001). The term “appropriate family member” is not defined in section 490.0147, so we turn to other statutory provisions to flesh out its meaning.
In cases where parents are divorced, as here, the statutory policy of this state is to presume that parental responsibility for minor children is shared by both parents unless there is a finding that such sharing of responsibility would be detrimental to a child. See § 61.13(2)(b)(2), Fla. Stat. (2001). DOH produced no evidence that shared parental responsibility had been found by the court to be detrimental in this instance. Therefore, under section 61.13(2)(b)(2), we assume that the parents shared responsibility for their son, and proceed to ask whether the non-residential *333 parent is limited in access to this kind of medical information. The answer to that question is found in section 61.13(2)(b)(3), which provides that:
“Access to records and information pertaining to a minor child, including, but not limited to, medical, dental, and school records, may not be denied to a parent because the parent is not the child’s primary residential parent.”
§ 61.13(2)(b)(3), Fla. Stat. (2001).
We read these statutes together to mean that a parent sharing responsibility for a minor patient — whether that parent is the primary residential parent or not — is presumed to be an “appropriate family member” unless the judge in the dissolution of marriage case has determined otherwise. Again, DOH did not adduce any evidence of a finding by the court in the parties’ divorce case indicating that the father should not share responsibility for his child. The fact that the father now resides in another state is simply irrelevant to this issue. The record fails to support any conclusion that the father was not an “appropriate family member” within the meaning of section 490.0147(3). Thus DOH failed to prove an improper disclosure of patient confidences arising from the Licensee’s conversation with his patient’s father.
We hasten to add that, in any case, there is absolutely no evidence that the Licensee disclosed any communication from his minor patient to the father. In fact the evidence shows that the only thing disclosed was the Licensee’s conclusion that the child was a danger to himself or others. Section 490.0147(3) does not purport to bar the disclosure of such conclusions; its terms bar only communications by the patient. Nothing in the record suggests that the mere disclosure of this conclusion amounts also to an improper disclosure of communications. The final order ignores this statutory distinction.
We are utterly mystified by the failure of DOH to confront these issues in its final order. There is no attempt to explain why the natural father of a child patient would not be an “appropriate family member” entitled to know that his child was in danger of hurting himself or others. DOH’s assertion that the Licensee violated section 490.0147 by telling the natural father that his minor son was in immediate danger is, quite frankly, preposterous. It would be an Orwellian world that punishes both the failure to inform a parent of a danger to a child, on the one hand, and actually informing the parent of such danger, on the other.
We next turn to the other grounds for DOH’s action. The Licensee was also found to have violated section 491.009(l)(n) and (o),[3] which authorize discipline when a Licensee fails to provide patient records upon written request of the patient or fails to make available any relevant records pertinent to the department’s investigation regarding the licensee’s background, respectively. The short answer to this charge is that the evidence does not support the findings. The evidence indicates without contradiction that the mother was not the patient, so the Licensee properly refused to supply the son’s records to her without his authorization.
*334 The child was old enough to be arguably competent to assert a privilege against disclosure of his psychotherapy file for any use in his parents dispute over modification of custody. See Attorney Ad Litem for D.K. v. Parents of D.K., 780 So.2d 301 (Fla. 4th DCA 2001) (noting that 17-year old child has privilege in confidentiality of his communications with his psychotherapist, even to exclusion of parent, when parent claims access to such records for use in litigation between the parents). Under Attorney Ad Litem for D.K., the child was not indisputably foreclosed from asserting the privilege, and. therefore the Licensee was under no obligation to furnish these records to the mother without her 16-year old child’s consent.
As regards the charge that the Licensee failed to furnish the child’s records to DOH, section 491.009(l)(o) requires a licensee to respond to an investigation by an agency or board within 30 days. The record shows that the Licensee did respond to the investigation within 30 days; he promptly filed a detailed denial of the charges and offered further cooperation. Section 491.009(l)(o) also requires a licensee to make available any relevant records about the “the licensee’s background.” When DOH receives a complaint from a party involved in a domestic relations custody dispute accusing a therapist of failing to furnish that parent with a “competent” child’s treatment file,[4] section 491.009(l)(o) does not give DOH the authority to compel the production of the file without the child patient’s consent. This statutory provision requires the therapist to furnish documents about the “the licensee’s background,” but the text does not support a construction that the therapist is also thereby obligated to furnish the patient’s confidential file to DOH.
Hence to acquire the child’s confidential file from the Licensee, DOH was required to furnish the Licensee with an authorization from his patient for the release of these records. The evidence shows that the first request from DOH failed to indicate that the child approved the disclosure. The record then shows that when presented with evidence of the child’s authorization, the Licensee furnished the records to DOH. Thus the failure to provide records to DOH was similarly unproven.
The final charge was that the Licensee failed to meet minimum standards of performance in professional activities as required by section 491.009(l)(r).[5] The evidence supporting this charge came from an expert witness whose testimony focused on the assertion that the Licensee’s records on the treatment of the child were inadequate. The expert stated that the Licensee was deficient in three separate aspects: record keeping, billing, and his testimony to the agency in the disciplinary proceeding. Because we conclude that the latter two were legally insufficient under the facts of this case to sustain a charge of deficient performance,[6] we discuss only the first area—record keeping.
*335 The expert’s chief criticism of the Licensee was that his written records lacked an “assessment and diagnosis” as well as a psychosocial history, a “presenting problem” and the “client’s point of view.” The expert went on to explain, however, that she was simply unable to read the Licensee’s handwriting and that “these are obviously notes that he has written for his own use and I am not able to translate them.” It is difficult for us to understand how the witness could be both unable to read and understand his records yet, at the same time, find them inadequate.
We do agree with DOH that an agency rule requires certain forms of record keeping for psychotherapy records, including the following:
“A psychotherapy record shall contain basic information about the client including name, address and telephone number, dates of therapy sessions, treatment plan and results achieved, diagnosis if applicable, and financial transactions between therapist and client including fees assessed and collected. A record shall also include notes or documentation of the client’s consent to all aspects of treatment, copies of all client authorizations for release of information, any legal forms pertaining to the client, and documentation of any contact the therapist has with other professionals regarding the client.”
Fla. Admin. Code Ann. 64B4-9.002(2)(2000). We would be more inclined to accept the evidence as legally sufficient to prove the charge, however, if it showed that such information as is required by rule was ever furnished to the Licensee by his patient, or that the failure to maintain records as specified in the rule had a deleterious impact on his professional services to his patient. In fact, however, the undisputed evidence appears to establish without contradiction that this minor patient was not actively seeking psychotherapy in a manner that would have allowed the Licensee to elicit the information required. The evidence relied on by the ALJ does not support a finding that his sessions with the child resulted in the kind of disclosures leading to the “assessment and diagnosis” contemplated by the rule. There is no evidence to support a finding that the sessions with the child ever involved anything more than a preliminary classification of the patient. Under the present state of the record, if this case were not being reversed on other grounds, we would have no alternative to reversing the findings on the substantive charge of deficient record keeping for lack of substantial competent evidence.
Finally we address the issue of the penalty imposed. Here the Board increased the penalty recommended by the ALJ to impose an additional requirement that the Licensee undertake, at his own expense, a course of instruction in ethics and refrain from teaching until he did so. At the final hearing, the Board orally instructed the Licensee not to continue his teaching until he had fulfilled the requirement of the course in ethics. The final order specified that the instructor of such course would be designated by the Board. In fact, the record shows that the person so designated was a member of the very Board imposing the penalty.
We express our strong disapproval of an agency administering a penalty that involves a licensee paying a member of the agency’s quasi-judicial body the costs and expenses of administering a penalty by that quasi-judicial body. Paying a person in the place of a judge for the cost of penalties imposed by the judge is too fraught with the appearance and possibili *336 ty of misadventure and the appearance of injustice to be tolerated under the requirement of due process. Thus even if we were able to affirm the finding of grounds for disciplinary action, we would reverse a penalty imposed under these circumstances and require that the imposition of penalties be done by someone who lacked the appearance of such a conflict.
REVERSED.
GUNTHER and MAY, JJ., concur.

. The record does not disclose the substance of any custody and visitation decree.

. He pleaded his own cause, for he was unrepresented by counsel.

. See § 491.009(1), Fla. Stat. (2001) ("(n) Failing to make available to a patient or client, upon written request, copies of tests, reports, or documents in the possession or under the control of the licensee, registered intern, or certificate holder which have been prepared for and paid for by the patient or client, (o) Failing to respond within 30 days to a written communication from the department or the board concerning any investigation by the department or the board, or failing to make available any relevant records with respect to any investigation about the licensee’s ... background.”).

. See Attorney Ad Litem, 780 So.2d at 305-07.

. “Failing to meet the minimum standards of performance in professional activities when measured against generally prevailing peer performance, including the undertaking of activities for which the licensee ... is not qualified by training or experience.”

. As regards the details of his billings, DOH has cited no statutory text granting the agency the power of regulation over the amount or nature of the details contained in billings to third party payors, so long as they are not fraudulent and do not improperly disclose patient confidences. As regards his testimony at a disciplinary hearing, there is no suggestion that any problem with it involved perjury or the failure to testify truthfully. The professional artfulness of the Licensee's testimony could not be used as the basis for discipline *335 unless it was properly charged, and here it was not.